# IN THE UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

|   |   |   |
|---|---|---|
| *In Re:* | ) | CASE NO: 19-11362-JPS |
|  | ) |  |
|  | ) | CHAPTER 7 |
| PAUL F. ZACHARIAS, SR., and | ) |  |
| VIVIAN E. ZACHARIAS, | ) | JUDGE: JESSICA E. PRICE SMITH |
|  | ) |  |
|  | ) | **CREDITORS' MOTION FOR** |
| Debtors. | ) | **SUMMARY JUDGMENT, AND** |
|  | ) | **MEMORANDUM IN SUPPORT** |
|  | ) | **THEREOF** |

Creditors Natalie Locigno and Zipkin Whiting Co., L.P.A., through undersigned counsel, move the Court for summary judgment on Creditors' claims under Federal Rule of Bankruptcy Procedure 7056. In support of this objection, the Creditors respectfully refer the Court to the attached memorandum.

Respectfully submitted,

 /s/ Kevin M. Gross
KEVIN M. GROSS, ESQ. (0097343)
Lewis A. Zipkin, Esq. (0030688)
Zipkin Whiting Co., L.P.A.
Zipkin Whiting Building
3637 South Green Road
Beachwood, Ohio 44122
Telephone: (216) 514-6400
Facsimile: (216) 514-6406
Email: kgross.zipkinwhiting@gmail.com
         zfwlpa@aol.com

Attorneys for Creditors Natalie Locigno and
Zipkin Whiting Co., L.P.A.

1

## INTRODUCTION

Debtors Paul F. and Vivian E. Zacharias ("Debtors") are precluded, as a matter of law, from discharging their debts to Creditors Natalie Locigno and Zipkin Whiting Co., L.P.A. ("Creditors"), because their debts arose from "willful and malicious" sexual harassment that resulted in actual injury to Creditor Locigno. Section 523(a)(6) of the United States Bankruptcy Code explicitly prevents debtors from using bankruptcy to discharge any debt that arose from "willful and malicious injury by the debtor to another entity or to the property of another entity…." 11 U.S.C.A. § 523(a)(6) (2019). Bankruptcy courts across the United States have repeatedly held that "sexual harassment discrimination is inherently an intentional tort," for which any debt related to such activity cannot be discharged in a Chapter 7 bankruptcy proceeding. *Basile v. Spagnola (In re Spagnola)*, 473 B.R. 518, 524 (Bankr. S.D.N.Y. 2012). The doctrine of issue preclusion prevents the Debtors from attempting to relitigate—at any pending or future hearing that pertains to this bankruptcy proceeding—the previous Ohio state court findings of their "willful and malicious" sexual harassment. As such, the Debtors are estopped from discharging their obligations to the Creditors. *Grogan v. Garner*, 498 U.S. 279, 285 n. 11 (1991).

This Court, as a matter of law, must conform to federal statutory authority and Supreme Court precedent and sustain this objection to prevent the Debtors from discharging their debts to the Creditors.

# STATEMENT OF UNDISPUTED MATERIAL FACTS

The Cuyahoga County Court of Common Pleas entered a final judgment against Debtors Paul F. and Vivian E. Zacharias that found the Debtors culpable for "willful and malicious" sexual harassment that caused actual injury to Creditor Locigno. *Locigno v. 425 West Bagley, Inc., et al.*, No. CV-06-594535 (8th Dist. Cuyahoga Jun. 21, 2006) (original action). To compensate the Creditors for this injury, "[t]he jury awarded [Creditor Locigno] $3,400 in lost wages and $25,000 for pain and suffering on the sexual harassment claim against each of the Zachariases[1] and $50,000 in punitive damages against [Debtor] Paul Sr. plus attorney fees [for Creditor Zipkin Whiting Co., L.P.A.] in [the amount of $99,370]." *Locigno v. 425 W. Bagley, Inc.*, 71 N.E.3d 644, 648, ¶ 12 (Ohio Ct. App. 2016) *cert. denied*, 76 N.E.3d 1207 (Ohio 2017).

The Debtors appealed this judgment to the Eighth District Court of Appeals, and the court extensively analyzed[2] the numerous instances of sexual harassment that the Debtors subjected upon Creditor Locigno:

> Plaintiff-appellee Natalie Locigno worked at Zach's Steakhouse in Berea as a bartender and server from March 2004 until January 2005. Zach's was a 'family' restaurant and bar owned by the Zachariases. According to Locigno, Paul Sr. sexually harassed her on an almost daily basis by asking her to kiss him, making sexual comments, and touching her breasts and buttocks. Locigno alleged that she reported Paul Sr.'s behavior to Vivian and Paul Jr., but they ignored her complaints. *Id.* ¶ 2.
>
> In 2006, Locigno filed suit against the Zachariases, alleging sexual harassment, sexual discrimination, retaliation, negligent retention, and intentional infliction of emotional distress. *Id.* ¶ 3.

---

[1] Paul Jr. escaped his obligation to the Creditors by filing for Chapter 13 bankruptcy—Case No. 17-11156-JPS—on March 6, 2017, the day before a court-ordered garnishment hearing on March 7, 2017, for Case No. CV-06-594535.

[2] A courtesy copy of the opinion is affixed to this motion as Appendix A.

> Locigno testified that when she arrived for her first day of work, Paul Sr. asked for a 'hello kiss.' She felt as though she had to give Paul Sr. a kiss during every shift and during some of these kisses he would even try to put his tongue in her mouth. His behavior was not limited to Locigno. Paul Sr. would tell the female waitstaff to 'line up' 'for your good morning kiss.' Paul Sr. made numerous comments on Locigno's appearance and body and offered to buy her and the other female staff lingerie. Throughout her employment at the restaurant, Paul Sr. touched, grabbed, or swatted Locigno's buttocks and breasts and made comments of a sexual nature. *Id.* ¶ 4.
>
> Locigno testified that Paul Jr., who also worked at the restaurant, once told her that his penis was like a can of Red Bull and would often called [sic] her stupid. Paul Jr. kept pornography on his office computer and would offer to show it to Locigno and other employees. Paul Sr. kept adult magazines at the restaurant; one popular adult magazine was delivered directly to the restaurant. Vivian denied that the magazine was delivered to the restaurant, but Paul Jr. admitted that they received it on a monthly basis. *Id.* ¶ 5.
>
> Locigno reported the harassment by Paul Sr. to both Paul Jr. and Vivian, but according to Locigno, they did nothing to change the atmosphere at the restaurant. Vivian told Locigno she could get another job if she was not happy in her current position. *Id.* ¶ 6.
>
> Near the end of her employment with Zach's, Locigno made a tape recording of an encounter with Paul Sr. in his office. She told him that she did not feel comfortable with him touching her. Paul Sr. responded, 'I do it because I know it makes you feel f***ed up and nervous.' He then asked her to give him a hug. *Id.* ¶ 7.

The Court of Appeals resoundingly affirmed the judgment against the Debtors and held that "the testimony showed that inappropriate sexual harassment permeated the work atmosphere at [Zach's Steakhouse], and was either known or should have been known to Paul Jr. and [Debtor] Vivian," and that "there was sufficient evidence to sustain [Creditor] Locigno's claim for sexual harassment…." *Id.* at 651, ¶¶ 33–34.

Following the decision from the Court of Appeals, the matter returned to the trial court for a hearing on garnishment of Debtors' assets. *Locigno v. 425 West Bagley, Inc., et*

4

*al.*, No. CV-15-739104 (8th Dist. Cuyahoga Jul. 22, 2015) (judgment lien). This hearing led to a foreclosure marshalling of the Debtors' property. *Locigno v. 425 West Bagley, Inc., et al.*, No. CV-18-908514 (8th Dist. Cuyahoga Dec. 17, 2018) (foreclosure marshalling of lien). In response to Creditors' foreclosure prosecution on Debtors' real properties to collect the sexual harassment judgment, Debtors filed this Chapter 7 bankruptcy petition on March 19, 2019.

**ARGUMENT**

Because Section 523(a)(6) of the United States Bankruptcy Code prevents the discharge of debts that arose from "willful and malicious" conduct, Debtors cannot use Chapter 7 bankruptcy to discharge their debts to Creditors because the Debtors were found liable for "willful and malicious" sexual harassment. 11 U.S.C.A. § 523(a)(6) (2019); *see Locigno v. 425 West Bagley, Inc., et al.*, No. CV-06-594535 (8th Dist. Cuyahoga Jun. 21, 2006) (holding the Debtors liable for sexual harassment against Creditor Locigno, and liable for attorney fees to Creditor Zipkin Whiting Co., L.P.A.); *Locigno v. 425 W. Bagley, Inc.*, 71 N.E.3d 644, 647, ¶ 7 (Ohio Ct. App. 2016) *cert. denied*, 76 N.E.3d 1207 (Ohio 2017) (affirming the lower court judgment against the Debtors).

The underlying facts show that the Debtors facilitated a hostile work environment wherein systemic, disturbing, and pervasive instances of sexual harassment were tolerated and encouraged. The Debtors' actions, which resulted in actual injury to Creditor Locigno, "displayed sexual oppression of a seemingly powerless subordinate employee at the hands of a powerful co-employer, [which] was intentional and deliberate

5

and continued throughout the [eleven] months of the Plaintiff's employment at [Zach's Steakhouse]." *Liccio v. Topkas (In re Topkas)*, 202 B.R. 850, 862 (Bankr. E.D. Penn. 1996).

The doctrine of issue preclusion, which the United States Supreme Court has said "appl[ies] in discharge exception proceedings pursuant to §523(a)," precludes the Debtors from relitigating the same fact pattern that both a Cuyahoga County jury and the Eight District Court of Appeals previously determined to be "willful and malicious" conduct. *Grogan v. Garner*, 498 U.S. 279, 285 n. 11 (1991). Since Ohio state courts decided the issue of "willful and malicious" conduct on the merits and entered a final judgment against the Debtors, the Full Faith and Credit Statute requires this Court to honor that judgment and grant the prior Ohio state court holdings preclusive effect in this bankruptcy action. 28 U.S.C. § 1738 (2019); *Corzin v. Fordu (In re Fordu)*, 201 F.3d 693, 703 (6th Cir. 1999); *Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315, 317 (6th Cir. 1997); *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 385 (1985).

Because "'a judgment arising out of a sexual harassment claims [sic] is excepted from discharge when it constitutes an obligation stemming from a willful and malicious injury,'" Debtors Paul F. and Vivian E. Zacharias are precluded, as a matter of law, from discharging their debts owed to Creditors Natalie Locigno and Zipkin Whiting Co., L.P.A. through the use of Chapter 7 bankruptcy. *McDonough v. Smith (In re Smith)*, 270 B.R. 544, 550 (Bankr. D. Mass. 2001) (quoting *Ludwig v. Martino (In re Martino)*, 220 B.R. 129, 132 (Bankr. M.D. Fla. 1998)).

**I.      Section 523(a)(6) of the Bankruptcy Code Prevents Discharge of Debts that Arose from "Willful and Malicious" Conduct**

The United States Bankruptcy Code explicitly states that "[a] discharge under [Section 727] of this title does not discharge an individual debtor from any debt…for willful and malicious injury by the debtor to another entity or to the property of another entity…." 11 U.S.C.A. § 523(a)(6) (2019). The United States Supreme Court has held that the "willful and malicious" standard applies to intentional torts, or "only [those] acts done with actual intent to cause injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 57 (1998). The United States Supreme Court has specified, in an effort to improve the chances of recovery against a debtor, "that the standard of proof for the dischargeability exceptions in 11 U.S.C. § 523(a) is the ordinary preponderance-of-the-evidence standard." *Grogan v. Garner*, 498 U.S. 279, 291 (1991).

**A.      The Standard for "Willful and Malicious" Conduct Requires Actual Injury for a Debt to Qualify for the Dischargeability Exception Under Section 523(a)(6)**

"In *Kawaauhau v. Geiger*, the Supreme Court found that the exception to discharge set forth in § 523(a)(6) for a willful and malicious injury includes 'only acts done with actual intent to cause injury.'" *Jones v. Svreck (In re Jones)*, 300 B.R. 133, 140 (1st Cir. B.A.P. 2000) (quoting *Kawaauhau*, 523 U.S. at 57 (1998)). "[D]ebts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Kawaauhau*, 523 U.S. at 64 (1998). "Consequently, a debtor's actions will be considered willful and malicious under § 523(a)(6) if the actions are deliberate and taken with the specific

7

intention of producing injury or if they have a substantial certainty of producing injury." *Liccio v. Topkas (In re Topkas)*, 202 B.R. 850, 860 (Bankr. E.D. Penn. 1996) (citation omitted).

**1.     The Standard of "Willfulness" Under Section 523(a)(6)**

For proceedings under Section 523(a)(6), the standard of "willfulness" does not carry the traditional definition of intending to commit the act that resulted in harm. Rather, "willfulness" under Section 523(a)(6) requires the actor to intend the harmful consequences of the action taken. "Willfulness is shown when it is demonstrated that the debtor either had a desire to cause the consequences of his act, or believed that injury was substantially certain to result from his conduct." *Hoewischer v. White (In re White)*, 551 B.R. 814, 821 (Bankr. S.D. Ohio 2016) (citing *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 464 (6th Cir. 1999)).

**2.     The Standard of "Maliciousness" Under Section 523(a)(6)**

Under Ohio common law, "actual malice" defines an act done with "personal hatred, spite or ill-will" towards the affected party. *Preston v. Murty*, 512 N.E.2d 1174, 1176 (Ohio 1987). However, under Section 523(a)(6), "[t]he word 'malicious' requires that the injury be 'wrongful' and committed 'without just cause or excuse, in conscious disregard of one's duty…. No special malice toward the creditor need be shown,' as malice can be present 'even in the absence of personal hatred, spite or ill-will.'" *In re Jones*, 300 B.R. at 140 (citation omitted).

In a simpler sense, the United States Bankruptcy Courts have concluded that "malice" is present where the actor breaks violates societal norms and causes harm to another, such that "[m]alice is implied when anyone of reasonable intelligence knows the act is contrary to commonly accepted duties in the ordinary relationships among people, and injurious to another." *In re Deluty*, 540 B.R. at 48 (citation omitted). "'Under § 526(a)(6), a person is deemed to have acted maliciously when that person acts in conscious disregard of his duties or without just cause or excuse.'" *In re White*, 551 B.R. at 821 (quoting *Gonzalez v. Moffit (In re Moffit)*, 252 B.R. 916, 923 (6th Cir. B.A.P. 2000)).

**B.     Sexual Harassment is an Intentional Tort that Satisfies the Requirement for "Willful and Malicious" Conduct Under Section 523(a)(6)**

The United States Bankruptcy Courts have consistently held that sexual harassment is an intentional tort that satisfies the "willful and malicious" standard under Section 523(a)(6). As the Bankruptcy Court for the Southern District of New York recently wrote, "[t]he Court is persuaded by the many bankruptcy courts that have found that sexual harassment discrimination is inherently an intentional tort and allowed it to be excepted from discharge as a willful and malicious injury." *Basile v. Spagnola (In re Spagnola)*, 473 B.R. 518, 524 (Bankr. S.D.N.Y. 2012) (citing *Voss v. Tompkins (In re Tompkins)*, 290 B.R. 194, 199 (Bankr. W.D.N.Y. 2003); *McDonough v. Smith (In re Smith)*, 270 B.R. 544 (Bankr. D. Mass. 2001); *Thompson v. Kelly (In re Kelly)*, 238 B.R. 156 (Bankr. E.D. Mo. 1999)).

C.  **The Facts of *Locigno v. 425 West Bagley, Inc.* Show Direct and Circumstantial Evidence of "Willful and Malicious" Sexual Harassment that Resulted in Actual Injury**

"In this case, [Creditor Locigno] has proven the requisite level of intent to sustain her claims. The testimony elicited at trial from the witnesses and both parties make it clear that the [Debtors'] actions toward[s] [Creditor Locigno] were committed willfully and maliciously in violation of [her] civil rights…." *In re Topkas*, 202 B.R. at 861. The Eighth District Court of Appeals' analysis of Debtors' actions exposed continuous and pervasive instances of "willful and malicious" sexual harassment:

> Paul Jr., son of Paul Sr. and Vivian, held a supervisory position over Locigno. The testimony at trial shows not only that he was aware of his father's actions towards Locigno and other female employees, but engaged in questionable behavior himself. *Locigno*, 71 N.E.3d at 651, ¶ 28.

> Locigno testified that Paul Jr. had pornography on his work computer, would show it to her, and would ask her what she thought of it. Paul Jr. compared his penis to a can of Red Bull and spelled out the word 's-e-x' to her because he knew she did not like to discuss sex at work. Locigno testified that she complained to Paul Jr. about Paul Sr. on a 'handful of different occasions' and also complained about the way Paul Sr.'s friends treated her in the restaurant. On one occasion, Locigno complained to Paul Jr. that there were customers in the restaurant inappropriately touching her. Paul Jr. told his father, 'See, Dad, you think you can touch the girls, that means your friends think they can touch the girls, too.' *Id.* ¶ 29.

> Locigno testified that three weeks before she ended her employment, she reported to Paul Jr. that Paul Sr. had again grabbed her breast and she did not like Paul Sr. touching her or being made to kiss him. According to Locigno, Paul Jr. told her she was 'no longer' and 'never required' to kiss or allow Paul Sr. to touch her. But Paul Sr. still requested it, and Locigno 'still did it' because she felt 'intimidated,' 'obligated,' and 'guilty.'" *Id.* ¶ 30.

> When asked if Vivian knew whether Paul Sr. had touched Locigno on any other occasions other than the one Locigno reported, Vivian testified: 'I would think he did. I would think he did.' *Id.* ¶ 32.

Near the end of her employment with Zach's, Locigno made a tape recording of an encounter with Paul Sr. in his office. She told him that she did not feel comfortable with him touching her. Paul Sr. responded, 'I do it because I know it makes you feel f * * * ed up and nervous.' He then asked her to give him a hug." *Id.* at 647, ¶ 7.

To borrow language from another bankruptcy court, the conduct of Debtors Paul F. and Vivian E. Zacharias, and that of their son, Paul Jr., is best described as follows:

> [Debtors'] conduct towards the Plaintiff was 'immoral' in the colloquial sense that it displayed sexual oppression of a seemingly powerless subordinate employee at the hands of a powerful co-employer, and it was intentional and deliberate and continued throughout the [eleven] months of the Plaintiff's employment at [Zach's Steakhouse]. Moreover, [Paul Sr.] increased his liberties taken with the Plaintiff's body despite her increasingly clear dissatisfaction with such conduct.

*In re Topkas*, 202 B.R. at 862.

## II. The Prior State Court Finding of "Willful and Malicious" Conduct Precludes the Discharge of All the Debtors' Obligations to Creditors

"'Under § 526(a)(6), a person is deemed to have acted maliciously when that person acts in conscious disregard of his duties or without just cause or excuse.'" *Hoewischer v. White (In re White)*, 551 B.R. 814, 821 (Bankr. S.D. Ohio 2016) (quoting *Gonzalez v. Moffit (In re Moffit)*, 252 B.R. 916, 923 (6th Cir. B.A.P. 2000)). "Under Ohio law, punitive damages are awarded upon a finding of actual malice." *In re Moffit*, 252 B.R. at 923 (citing *Malone v. Courtyard Marriott Ltd. P'ship*, 659 N.E.2d 1242, 1247 (Ohio 1996)). "For this reason, bankruptcy courts applying the doctrine of issue preclusion routinely conclude that an award of punitive damages by an Ohio state court establishes that the court has made the findings sufficient to satisfy the 'malice' requirement of § 523(a)(6)." *Dardinger v. Dardinger (In re Dardinger)*, 566 B.R. 481, 502 (Bankr. S.D. Ohio 2017).

11

"'[A] judgment arising out of a sexual harassment claims [sic] is excepted from discharge when it constitutes an obligation stemming from a willful and malicious injury.'" *McDonough v. Smith (In re Smith)*, 270 B.R. 544, 550 (Bankr. D. Mass. 2001) (quoting *Ludwig v. Martino (In re Martino)*, 220 B.R. 129, 132 (Bankr. M.D. Fla. 1998)). "A non-dischargeable debt includes the full amount of the liability associated with the conduct at issue, including 'debt arising from' or 'debt on account of' that personal injury." *Seubert v. Deluty (In re Deluty)*, 540 B.R. 41, 47 (Bankr. E.D.N.Y. 2015) (citing *Cohen v. de la Cruz*, 523 U.S. 213, 220–21 (1998)).

A. **The Doctrine of Issue Preclusion Applies to Discharge Exception Proceedings Under Section 523(a)**

The United States Supreme Court has previously held that "[issue preclusion] principles…apply in discharge exception proceedings pursuant to §523(a)." *Grogan v. Garner*, 498 U.S. 279, 285 n.11 (1991). Under that standard, "federal courts must give 'the same full faith and credit' to a state court judgment as the judgment would be accorded under the laws of the state in which it was entered." *In re Dardinger*, 566 B.R. at 494 (quoting 28 U.S.C. § 1738 (2019)). "Bankruptcy courts' exclusive jurisdiction over dischargeability issues does not alter this rule." *Rally Hill Productions, Inc. v. Bursack (In re Bursack)*, 65 F.3d 51, 53 (6th Cir. 1995) (citing *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985) ("[A] state court judgment may in some circumstances have preclusive effect in a subsequent action within the exclusive jurisdiction of the federal courts.")).

In order to properly decide whether a state court judgment has a preclusive effect on an action in federal court, a federal court must "consider first the law of the State in which the judgment was rendered to determine its preclusive effect." *Marrese*, 470 U.S. at 375; *Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315, 317 (6th Cir. 1997). Because the factual matters at issue were litigated previously in the Ohio state court system, Ohio's four-part test for issue preclusion necessarily controls in the case at bar. Ohio state courts will grant prior judgments preclusive effect if: (1) a prior court entered a "final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue"; (2) the factual issues were "actually and directly litigated in the prior suit and [were] necessary to the final judgment"; (3) the factual issues in question "in the present suit [are] identical to the issue[s] in the prior suit"; and (4) "[t]he party against whom estoppel is sought was a party…to the prior action." *In re Dardinger*, 566 B.R. at 494.

### 1. The State Court Entered a Final Judgment on the Merits that Debtors' Conduct was "Willful and Malicious"

The Eighth District Court of Appeals, in affirming the trial court judgment against Debtors, held that "the testimony [at trial] showed that inappropriate sexual harassment permeated the work atmosphere at [Zach's Steakhouse], and was either known or should have been known to Paul Jr. and [Debtor] Vivian." *Locigno*, 71 N.E.3d at 651, ¶ 33. The Court of Appeals further examined the trial court record and found numerous instances of "willful and malicious" conduct from both the Debtors and from their son, Paul Jr:

> The testimony at trial shows not only that [Paul Jr.] was aware of [Debtor Paul Sr.'s] actions towards [Creditor] Locigno and other female employees, but [that Paul Jr.] engaged in questionable behavior himself. *Id.* at ¶ 28.

13

>[Creditor] Locigno testified that three weeks before she ended her employment, she reported to Paul Jr. that [Debtor] Paul Sr. had again grabbed her breast and she did not like Paul Sr. touching her or being made to kiss him….But Paul Sr. still requested it, and Locigno "still did it" because she felt "intimidated," "obligated," and "guilty." *Id.* at ¶ 30.
>
>Near the end of her employment with Zach's, Locigno made a tape recording of an encounter with Paul Sr. in his office. She told him that she did not feel comfortable with him touching her. Paul Sr. responded, "I do it because I know it makes you feel f * * * ed up and nervous." He then asked her to give him a hug. *Id.* at 648, ¶ 7.

The ultimate conclusion of the Court of Appeals was that "there was sufficient evidence to sustain [Creditor] Locigno's claim for sexual harassment against [Debtors]…." *Id.* at 651, ¶ 34. As such, "[t]he jury awarded [Creditor Locigno] $3,400 in lost wages and $25,000 for pain and suffering on the sexual harassment claim against each of the [Debtors] and $50,000 in punitive damages against [Debtor Paul Sr.]…." *Id.* at 648, ¶ 12. Because Ohio courts only award "punitive damages…upon a finding of actual malice," the trial court therefore entered a final judgment on the merits that Debtors engaged in "willful and malicious" conduct. *In re Moffit*, 252 B.R. at 923 (citation omitted).

**2.  The State Court Finding that Debtors' Conduct was "Willful and Malicious" was Necessary to Final Judgment**

In order to award punitive damages, Ohio state courts must make the determination that the conduct in question was "willful and malicious." *In re Moffit*, 252 B.R. at 923 (citation omitted). As the Eighth District Court of Appeals noted, "the testimony [at trial] showed that inappropriate sexual harassment permeated the work atmosphere at [Zach's Steakhouse]," for which the Debtors were found liable. *Locigno*, 71

N.E.3d at 651, ¶ 33. As other bankruptcy courts have noted, "'a judgment arising out of a sexual harassment claims [sic] is excepted from discharge when it constitutes an obligation stemming from a willful and malicious injury.'" *In re Smith*, 270 B.R. at 550 (citation omitted).

The trial court denied Debtors' JNOV motions, and Debtors appealed to the Eighth District Court of Appeals. The Court of Appeals, in affirming the trial court's final judgment, held that "there was sufficient evidence [of sexual harassment] to sustain [Creditor] Locigno's claim for ["willful and malicious"] sexual harassment against [Debtors] and, thus, the trial court did not err in denying their JNOV motions." *Id.* at 652, ¶ 34. Such evidence included "[Creditor] Locigno report[ing] the harassment by [Debtor] Paul Sr. to both Paul Jr. and [Debtor] Vivian, but according to [Creditor] Locigno, they did nothing to change the atmosphere at the restaurant," and an audio recording of Debtor Paul Sr. telling Creditor Locigno that "'I [harass you] because I know it makes you feel f * * * ed up and nervous.'" *Id.* at 647, ¶¶ 6–7.

The vast quantity of evidence that pointed to continuous, pervasive, and "willful and malicious" conduct from the Debtors was, as both the trial court and the Court of Appeals held, necessary and vital to the final judgment entered against the Debtors.

3. **The Factual Issues that the State Court Decided are Identical to the Factual Issues Before this Court**

The previously decided factual finding that the Debtors engaged in "willful and malicious" conduct is the precise reason why the Debtors sought protection under the bankruptcy code. At the creditor's hearing for this bankruptcy case, Debtor Paul Sr.

15

testified under oath that the impetus for this bankruptcy petition was the impending foreclosure action levied against the Debtors to collect the judgment rendered for their "willful and malicious" conduct. *See Locigno v. 425 West Bagley, Inc., et al.*, No. CV-18-908514 (8th Dist. Cuyahoga Dec. 17, 2018) (foreclosure marshalling of lien). That admission, in conjunction with the prior factual and legal determination of Debtors' "willful and malicious" conduct, leaves no doubt that the factual issues from the prior Ohio state court actions are identical to the factual issues under review in this Court.

4. **The Creditors and Debtors were All Parties to the Prior Action that Determined the "Willful and Malicious" Nature of Debtors' Conduct**

The extensive case history between the Creditors and Debtors presents well documented, extensive, and indisputable evidence of the prior legal entanglement of all parties involved in the case before this Court, and of the ultimate determination of Debtors' "willful and malicious" conduct. *See Locigno,* No. CV-06-594535 (original action); *Locigno*, No. CV-15-739104 (judgment lien); *Locigno*, No. CV-18-908514 (foreclosure marshalling of lien); *Locigno*, 71 N.E.3d 644 (appeal of original action).

B. **The State Court Finding of "Willful and Malicious" Conduct Precludes the Discharge of Debtor's Obligation to Pay Punitive Damages to Creditor Locigno**

"A non-dischargeable debt includes the full amount of the liability associated with the conduct at issue, including 'debt arising from' or 'debt on account of' that personal injury." *In re Deluty*, 540 B.R. at 47 (citing *Cohen*, 523 U.S. at 220–21 (1998)). Ohio state courts only award "punitive damages…upon a finding of actual malice." *In re Moffit*, 252

16

B.R. at 923 (citation omitted). "Because the punitive damages… 'stem[] from the same "willful and malicious" injury as [the] nondischargeable compensatory damages,' they are also nondischargeable." *In re Dardinger*, 566 B.R. at 502 (citation omitted).

In the prior Ohio state court action, "[t]he jury awarded [Creditor Locigno]…$50,000 in punitive damages against [Debtors]…." *Locigno v. 425 W. Bagley, Inc.*, 71 N.E.3d at 648, ¶ 12. Because punitive damages in Ohio are associated directly with "willful and malicious" conduct, and a nondischargeable debt encompasses the totality of the debt incurred as a result of "willful and malicious" conduct, Debtors cannot, as a matter of law, discharge their $50,000 debt for punitive damages to Creditor Locigno.

C. **The State Court Finding of "Willful and Malicious" Conduct Precludes the Discharge of Debtors' Obligation to Pay Attorney Fees to Creditor Zipkin Whiting Co., L.P.A.**

"[A]ttorneys fees flowing from a nondischargeable debt are also excepted from discharge when such fees were awarded in the judgment giving rise to the nondischargeable debt." *Rowe Oil, Inc. v. McCoy (In re McCoy)*, 189 B.R. 129, 136 (Bankr. N.D. Ohio 1995); *see Cohen*, 523 U.S. at 214 (1998).

In the prior Ohio state court action, "[t]he jury awarded [Creditor Zipkin Whiting Co., L.P.A.]…attorney fees in [the amount of $99,370]." *Locigno v. 425 W. Bagley, Inc.*, 71 N.E.3d at 648, ¶ 12. Because the attorney fees arose directly from "willful and malicious" conduct, and a nondischargeable debt encompasses the totality of the debt incurred as a result of "willful and malicious" conduct, Debtors cannot, as a matter of law, discharge their $99,370 debt for attorney fees to Creditor Zipkin Whiting Co., L.P.A.

## CONCLUSION

For the reasons stated herein, the Creditors hereby object to the discharge of Debtors' aforementioned debts to the Creditors, and respectfully request that the Court grant this motion for summary judgment and deny Debtors' attempted discharge of their debts owed to the Creditors.

Respectfully submitted,

/s/ Kevin M. Gross
KEVIN M. GROSS, ESQ. (0097343)
Lewis A. Zipkin, Esq. (0030688)
ZIPKIN WHITING CO., L.P.A.
Zipkin Whiting Building
3637 South Green Road
Beachwood, Ohio 44122
Telephone: (216) 514-6400
Facsimile: (216) 514-6406
Email: kgross.zipkinwhiting@gmail.com
zfwlpa@aol.com

Attorneys for Creditors Natalie Locigno and
Zipkin Whiting Co., L.P.A.

**PROOF OF SERVICE**

An electronic copy of the foregoing has been served by the Court's CM/ECF system on June XX, 2019, upon:

Richard H. Nemeth, Esq. (0007392)
NEMETH & ASSOCIATES, LLC
526 Superior Avenue East
Suite 333
Cleveland, Ohio 44114
Telephone: (216) 502-1300
Facsimile: (216) 502-1301
Email: mail@ohbklaw.com

                                            /s/ Kevin M. Gross
                                            KEVIN M. GROSS, ESQ. (0097343)