IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION, CLEVELAND

| | |
|---|---|
| IN RE: ) | CHAPTER 7 |
| ) | |
| Paul F. Zacharias, Sr. ) | CASE NO. 19-11362 |
| and ) | |
| Vivian E. Zacharias, ) | JUDGE: Jessica Price Smith |
| ) | |
| Debtors. ) | Adv. Pro. Case No. 19-1050 |
| ) | |

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND CROSS MOTION FOR SUMMARY JUDGMENT**
_____

The debtor/defendants ["Respondents"], by and through counsel, respectfully request that the Court deny the motion of plaintiffs Natalie Locigno and Zipkin Whiting Co., L.P.A. ["Movants"] for summary judgment and submit their own motion for summary judgment, for the reasons set forth in the accompanying brief, which is attached hereto and incorporated herein.

Respectfully submitted,

*/s/ Richard H. Nemeth*
Richard H. Nemeth (#0007392)
Nemeth & Associates, LLC
*Attorney for the Respondents*
526 Superior Ave., East, Suite 333
Cleveland, OH 44114-1998
216/502-1300; Fax: 216/502-1301
Email: mail@ohbklaw.com

1

**MEMORANDUM**

In support of their objection to Movants' motion for summary judgment, and in support of their own motion for summary judgment, Respondents state as follows:

Introduction

Respondents agree that this Court is precluded from substituting its own judgment for that of the Cuyahoga County Court of Common Pleas, but state that judgment must be entered in their favor as a matter of law based on the state court judgments.

Movants have repeatedly and deliberately misrepresented and mischaracterized not only the conduct engaged in by Respondents, but also the judgments Movants obtained in the state court, and they continue to do so in this case. The state court proceeding to which this case relates arises from Movant Natalie Locigno's employment during 2004 and 2005 at the family restaurant operated by Respondents and their son. While Paul Zacharias, Sr.'s conduct toward Ms. Locigno was clearly boorish and inappropriate in a place of employment, it is also clear that he intended no harm, the fundamental requirement for a finding of non-dischargeability. In fact, the opposite is true: his conduct toward Ms. Locigno was romantic; he was flirting with her. The state court jury rejected Ms. Locigno's claims that he intended to inflict emotional distress or that he retaliated against her. He was found liable for sexual harassment only, which was the result of his willful and reckless behavior, not of an intent to harm. The courts are split on whether such contact can be found to be the result of an intent to harm; Respondents urge the Court to find that it was not.

The jury entered a judgment against Vivian Zacharias, not because she intended to harm Ms. Locigno, but rather because there was enough evidence to support a finding that she "either

knew or should have known" about Paul, Sr.'s conduct toward Ms. Locigno. There was never a finding, or even a suggestion, that Vivian herself engaged in any offensive conduct toward Ms. Locigno. The claim against her was vicarious only; the courts are in universal agreement that vicarious liability for sexual harassment is dischargeable.

In order to cast a negative light on Respondents, Movants attribute to them conduct from another case, a case in which Respondents were not involved. Although it is difficult to comprehend, Respondents literally ask the Court to accept as fact in this case a court's description of the conduct of litigants in different case. Moreover, Respondents have repeatedly claimed that the state court entered judgment against the corporate owner of Respondent's restaurant [i.e., 425 West Bagley, Inc.] when it did not; and that Zipkin, Whiting Co. L.P.A. has a judgment for attorneys fees against Respondents and the corporation when it does not. Further, Respondents recovered $10,000.00 via garnishment but have never acknowledged receipt of those funds and filed fraudulent claims in this case that do not offset their judgments by the amount recovered.

Respondents therefore state that the judgments against them must survive a non-dischargibility claim under 11 U.S.C. §523(a)(6) and are subject to the discharge because there was manifestly no intent to harm, either directly or vicariously, as required under the standard established by the U.S. Supreme Court in *Kawaauhau v. Geiger*, 523 U.S. 57, 57 (1998). Respondents further state that Lewis, Zipkin was not a party to the proceedings in state court and therefore has no claim whatsoever against Respondents. The state court awarded attorneys fees to Ms. Locigno only, not her non-party agent. Accordingly, Lewis, Zipkin's claim of non-dischargeability must be rejected and denied. For these reasons, Respondents request that the Court deny Movants' motion for summary judgment and instead enter judgment in their favor on their cross motion.

3

Statement of facts:

1. Movant Natalie Locigno is natural person residing in Cuyahoga County, Ohio. She is a former employee of the restaurant known as "Zach's Steak House" which is owned by the Ohio corporation known as 425 West Bagley, Inc. which in turn is owned by Respondents and their son, Paul A. Zacharias, Jr. [See, "Appellate Journal Entry" attached hereto as Exhibit A, p. 3].

2. Zipkin, Whiting Co., L.P.A. is an Ohio legal corporation with a place of business in Beachwood, Ohio.

3. Respondent Paul Zacharias, Sr. is a retired 73-year-old man residing in Cuyahoga County, Ohio, who formerly was the manager of Zach's Steak House, a family restaurant in Berea, Ohio formerly operated by Respondents and their son. [Exhibit A, p. 3].

4. Respondent Vivian Zacharias is a retired 73-year-old woman who also resides in Cuyahoga County, Ohio, and also formerly worked at Zach's Steak House. Vivian is Paul Zacharias, Sr.'s spouse. [Exhibit A, pp. 3-5].

5. In 2006, Ms. Locigno filed a lawsuit against Respondents, their son, and the corporate owner of Zach's Steak House, alleging that Paul Zacharias, Sr. had sexually harassed her by, for example, asking her to kiss him on the cheek on multiple occasions, offering to purchase her and other waitresses lingerie, and touching her. Ms. Locigno testified that she was told by Paul, Jr. that she was never required to kiss Paul, Sr. or allow him to touch her, but she did it anyway because she felt "intimidated, obligated and guilty." [Exhibit A, pp. 3-6].

6. On May 17, 2007, following a jury trial, a judgment was entered by the Cuyahoga County Court of Common Pleas in favor of Movant Natalie Locigno and against Respondents and

4

their son, Paul A. Zacharias, Jr. in the amount of $28,400.00 for employment-related harassment. An additional judgment in the amount of $50,000.00 for punitive damages was awarded to her but against Paul A. Zacharias, Sr. only. No judgment was entered against Respondents' corporation. Ms. Locigno also alleged that Paul Zacharias, Sr. retaliated against her for filing the lawsuit and intended to inflict emotional distress, but the jury found that she left her employment voluntarily and that Paul, Sr. did not intend to cause emotional distress and so rendered a verdict in favor of Paul Sr. on these counts. The judgment entry provides:

> "TRIAL RESUMED TODAY, 5/10/07. JURY DELIBERATES. THE JURY RETURNS A VERDICT FOR THE PLAINTIFF, NATALIE LOCIGNO, AND AGAINST THE DEFENDANTS *PAUL ZACHARIAS, SR., PAUL ZACHARIAS JR. AND VIVIAN ZACHARIAS* ON THE CLAIM OF SEXUAL HARASSMENT AND DAMAGES OF $25,000.00 FOR PAIN AND EMOTIONAL SUFFERING AND $3,400.00 FOR LOST WAGES. THE JURY RETURNS A VERDICT FOR DEFENDANT, PAUL ZACHARIAS, SR., AND AGAINST PLAINTIFF, NATALIE LOCIGNO ON HER CLAIMS FOR RETALIATION AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS. THE JURY RETURNS A PUNITIVE DAMAGES AWARD FOR NATALIE LOCIGNO AND AGAINST *PAUL ZACHARIAS, SR*. IN THE AMOUNT OF $50,000.00. THE JURY DETERMINES THAT ATTORNEY FEES BE AWARDED TO PLAINTIFF, NATALIE LOCIGNO, WITH THE COURT TO DETERMINE THE AMOUNT. COURT COST ASSESSED TO THE DEFENDANT(S). BOOK 3880 PAGE 0941 05/17/2007 NOTICE ISSUED". (Emphasis added). [See, Judgement Entry, Exhibit B].

7. There was consternation in the jury room during deliberations. The foreman reported to the judge that the jury was deadlocked and could not reach verdicts. [Exhibit A, p. 18]. At one point, the foreman reported that there had been treats of violence among members of the jury and that one member brought outside materials into the jury room for consideration against the court's instructions. Perhaps for these reasons, the state court judge felt conflicted about the jury verdicts and left the file in his desk for eight years before addressing the issue of the amount of attorneys fees. On July 16, 2015, shortly before the presiding judge, the Honorable Jose Villanueva, retired, the Court finally entered a judgment addressing the amount of attorney's fees,

5

which read in pertinent part:

> "PLAINTIFF IS AWARDED ATTORNEYS FEES IN THE AMOUNT OF $99,370.00 ($110,480.00 LESS $11,110.00). FINAL. NO JUST CAUSE FOR DELAY. COURT COST ASSESSED TO THE DEFENDANT(S)". [See, Judgment Entry, Exhibit C]

8. Although the Court did not specify which defendants were liable for attorney's fees, Ohio sexual harassment law provides that attorney's fees may only be awarded against a defendant who has been found liable for punitive damages and therefore the attorneys fee judgment is against Paul Zacharias, Sr. only. And, the judgment was expressly entered in favor of Ms. Locigno only, not in favor of Zipkin, Whiting Co., L.P.A. [Exhibit C].

9. Respondents take great umbrage at Movant's false characterization of their conduct by substituting their names into a fact pattern described by a court in a case completely unrelated to them:

> "To borrow language from another bankruptcy court, the conduct of Debtors Paul F. and Vivian E. Zacharias, and that of their son, Paul Jr., is best described as follows:
>
> [Debtors'] conduct towards the Plaintiff was 'immoral' in the colloquial sense that it displayed sexual oppression of a seemingly powerless subordinate employee at the hands of a powerful co-employer, and it was intentional and deliberate and continued throughout the [eleven] months of the Plaintiff's employment at [Zach's Steakhouse]. Moreover, [Paul Sr.] increased his liberties taken with the Plaintiff's body despite her increasingly clear dissatisfaction with such conduct. *In re Topkas*, 202 B.R. at 862." [Movants Motion for Summary Judgment, page 11, attached hereto as Exhibit D]

While the quote is a well-crafted description of conduct that an unrelated court found to be tortious, it has absolutely nothing to do with the facts in this case and does not describe Respondents' conduct. Movants' attempt to mislead the Court into believing the it does is, frankly, outrageous.

Argument

**MOVANTS' MOTION FOR SUMMARY JUDGMENT MUST BE DENIED BECAUSE THE STATE COURT FOUND THAT PAUL ZACHARIAS, SR. DID NOT INTEND TO HARM NATALIE LOCIGNO, BECAUSE VIVIAN ZACHARIAS DID NOT ENGAGE IN ANY CONDUCT EVEN ALLEGED TO INCLUDE AN INTENTION TO HARM, AND BECAUSE ZIPKIN, WHITING CO., L.P.A. WAS NOT GRANTED A JUDGMENT**

Summary judgment is appropriate if a review of the record, in a light most favorable to the non-moving party, demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); *see generally Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party moving for summary judgment has the initial burden of proving that there is no genuine issue as to any material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 161, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Leadbetter v. Gilley,* 385 F.3d 683, 689-90 (6th Cir.2004). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether the [trier of fact] could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. 2505.

Once the moving party has met this initial burden of proof, the non-moving party must present specific facts sufficient to raise a genuine issue for trial and may not rest on its pleadings or mere assertions of disputed facts to defeat the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (stating that the party

opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts"). Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. The mere existence of a scintilla of evidence in support of the opposing party's position will not be sufficient to forestall summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Pavlovich v. National City Bank,* 342 F.Supp.2d 718, 722-723 (N.D.Ohio 2004) (citing *Fulson v. City of Columbus,* 801 F.Supp. 1, 4 (S.D.Ohio 1992)). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.* Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479-80 (6th Cir.1989) (citing *Frito-Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1034 (D.C.Cir.1988)). In ruling on a motion for summary judgment, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505; *White v. Turfway Park Racing Ass'n, Inc.,* 909 F.2d 941, 943-44 (6th Cir.1990).

When the Court evaluates cross motions for summary judgment, it "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.,* 336 F.3d 503, 506-07 (6th Cir.2003).

In this case, the underlying claims have been fully tried in the Cuyahoga County Court of Common Pleas and, to the extent the facts have been established, this Court must defer to the

findings of the state court. *Grogan v. Garner*, 498 U.S. 279 (1991). Federal Courts must give the same full faith and credit to a state court judgment as the judgment would be accorded under the laws of the state in which it was entered. *In re Dardinger*, 566 B.R. 481 (Bankr. S.D. Ohio 2017). However, Bankruptcy Courts have exclusive jurisdiction over dischargeability issues. *In re Bursack*, 65 F. 3d 51 (6th Cir. 1995).

**The jury in the state court proceeding found in favor of Paul Zacharias, Sr. on the claims that he intended to inflict emotion distress and that he retaliated against Natalie Locigno, the only claims that required a finding that he intended to cause harm.**

In order for a claim to be determined to be non-dischargeable under 11 U.S.C. $523(a)(6), the debtor must have intended to cause an injury to the claimant. Reckless conduct not actually intended to cause injury is not enough. In a unanimous decision authored by Justice Ginsburg, the U.S. Supreme Court held:

> *"Held:* Because a debt arising from a medical malpractice judgment attributable to negligent or reckless conduct does not fall within the §523(a)(6) exception, the debt is dischargeable in bankruptcy. Section 523(a)(6)'s words strongly support the Eighth Circuit's reading that only acts done with the *actual intent to cause injury* fall within the exception's scope. The section's word "willful" modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional *injury,* not merely, as the Kawaauhaus urge, a deliberate or intentional *act* that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury" or selected an additional word or words, *i.e.,* "reckless" or "negligent," to modify "injury." Moreover, §523(a)(6)'s formulation triggers in the lawyer's mind the category "intentional torts," which generally require that the actor intend the *consequences* of an act, not simply the act itself. The Kawaauhaus' more encompassing interpretation could place within the excepted category a wide range of situations in which an act is intentional, but injury is unintended, *i.e.,* neither desired nor in fact anticipated by the debtor. A construction so broad would be incompatible with the well-known guide that exceptions to discharge should be confined to those plainly expressed, and would

9

render superfluous the exemptions from discharge set forth in §§523(a)(9) and 523(a)(12)." [Emphasis added]. *Kawaauhau v. Geiger*, 523 U.S. 57 (1998).

In the state court case, Ms. Locigno claimed that Paul Zacharias, Sr. sexually harassed her, by requesting that she kiss him on the cheek, offering to purchase lingerie for her and by touching her. While this conduct is boorish and inappropriate in a workplace, it obviously does not evidence an intent to harm. To the contrary, it evidences a romantic interest in Ms. Locigno. The conduct was willful and reckless, but there was manifestly no intent to cause an injury to Ms. Locigno and therefore her judgment on this claim must survive a non-dischargeability claim under 11 U.S.C. §523(a)(6). *In re Busch*, 311 B.R. 657 (Bankr. N.D.N.Y 2004). [Finding that the debtor did not intend to harm the plaintiff in any manner because he acted with specific intent to advance his own prurient interest at the expense of the plaintiff's right to be free from sexual attack and harassment]. Movants cite a number of cases holding that judgments for sexual harassment include, as a matter of law, intent to harm, illustrating that there is a split among courts on this issue. Respondents urge the Court to adopt the reasoning of the line of cases holding that a finding of sexual harassment, particularly when coupled with the jury findings that there was no intent to cause emotional distress and that there was no retaliation as presented here, is equivalent to a finding that harasser did not intend harm and reject Movant's claim of non-dischargeability.

Ms. Locigno also claimed that Paul Zacharias, Sr. intended to inflict emotional distress and retaliated against her. But these claims were rejected by the jury and the state court entered judgment in favor of Paul Zacharias, Sr. on these claims. Accordingly, Movants' motion for summary judgment must be denied on Movants' claims against Paul Zacharias, Sr. and summary judgment must be entered in his favor instead.

**<u>Vivian Zacharias was found liable on the sexual harassment</u>**

**claim because the state court found that there was sufficient evidence to support a finding that she was aware of Paul Zacharias, Sr.'s conduct; there was never even a suggestion that she herself engaged in any conduct that could be considered to evidence an intent to cause injury.**

In the state court proceeding, the jury found that Vivian Zacharias was liable for sexual harassment, not because she engaged in any inappropriate behavior toward Ms. Locigno herself, but rather because, according to the Eight District of Ohio Court of Appeals, she "either knew or should have known" about her husband's conduct. But, in order for a claim to be found to be non-dischargeable, the debtor must have engaged in willful conduct that is intended to cause injury to the victim of that conduct. There was never even an allegation in the state court proceeding that Vivian engaged in inappropriate conduct, the liability against her arose vicariously from her knowledge of her husband's conduct. Indeed, both Ms. Locigno and Vivian testified that Vivian was sympathetic to Ms. Locigno's concerns about Paul, Sr.'s behavior:

> "Locigno testified about conversation she had with Vivian couple of weeks before she left Zachs, telling Vivian she "could not take it" anymore. According to Locigno, Vivian responded, "I don't blame you. I would have left, too" and then Vivian, upset, hissed and walked away from her. Vivian recalled the conversation also, claiming that she told Locigno that she should find another job if she was not happy at Zachs."

The authorities cited by Movants in support of the proposition that sexual harassment can be the basis for a finding of non-dischargeability for the actual harasser also support the proposition that claims based on vicarious liability can be distinguished because of the lack of intent to harm. [See, e.g., *In re Spagnola*, 473 B.R. 518 (Bankr. S.D.N.Y. 2012) [holding that the debtor's reliance on a case citing a law review article was misplaced because the law review article addressed the dischargeability of sexual harassment claims arising vicariously]]. See also, *In re Busch, Id.*

11

It is respectfully submitted that while sexual harassment claims against the person who committed the offensive behavior can be found to be non-dischargeable. Claims arising vicariously, based solely on the debtor's knowledge of other's conduct, are dischargeable as a matter of law for lack of intent to harm. Accordingly, the Court must deny Movants' motion for summary judgment with respect to Vivian Zacharias and instead enter judgment in her favor.

> **Zipkin, Whiting Co., L.P.A. was not awarded a judgment in the state court proceeding; accordingly, there is no basis upon which to base a finding that Respondents' discharge does not apply to it.**

It is axiomatic that all claims against debtors are discharged unless there is an express provision in the Bankruptcy Code denying the applicability of the discharge. Movants allege that 11 U.S.C. §523(a)6), which relates to claims for willful and malicious injury, prevents Respondents from discharging their debt to it. But, Zipkin, Whiting Co., L.P.A. ["Zipkin, Whiting"] was not awarded a judgment in the state court proceeding; the award of attorneys fee was expressly awarded to Natalie Locigno, not to Zipkin, Whiting. Indeed, Zipkin, Whiting was not a party to the state court proceeding and therefore the state court did not have personal jurisdiction over Zipkin, Whiting that would support a judgment entry.

Zipkin, Whiting fraudulently represents to this Court that the state court entered a judgment in its favor by substituting its name into a quote from the state court judgment entry below in place of the plaintiff's:

> "In the prior Ohio state court action, "[t]he jury awarded [*Creditor Zipkin Whiting Co., L.P.A.*]…attorney fees in [the amount of $99,370]." *Locigno v. 425 W. Bagley, Inc.*, 71 N.E.3d at 648, ¶ 12. Because the attorney fees arose directly from "willful and malicious" conduct, and a nondischargeable debt encompasses the totality of the debt incurred as a result of "willful and malicious"

12

> conduct, Debtors cannot, as a matter of law, discharge their $99,370 debt for attorney fees to Creditor Zipkin Whiting Co., L.P.A.'"
> [Emphasis added].

In fact, the attorneys fee judgment was awarded to the plaintiff, not to Zipkin, Whiting:

> "PLAINTIFF IS AWARDED ATTORNEYS FEES IN THE AMOUNT OF $99,370.00 ($110,480.00 LESS $11,110.00). FINAL. NO JUST CAUSE FOR DELAY. COURT COST ASSESSED TO THE DEFENDANT(S)".

Zipkin, Whiting wrongfully commandeered Natalie Locigno's award of attorneys fees for its own purposes, going so far as misrepresenting to the state court that is was awarded a judgment, obtaining a certificate of judgement based on that misrepresentation in its own name, unlawfully encumbering Respondent's property with that judgment lien and garnishing the bank account of the corporate owner of the Respondents' restaurant despite the fact that it was not awarded a judgment and despite the fact that neither Ms. Locigno or Zipkin, Whiting were awarded a judgment against Respondents' corporation. And, to make matters worse, Zipkin Whiting not only filed a fraudulent claim in the case at bar, alleging wrongfully that it had obtained a judgment in its behalf, but also failing to credit the amount of Ms. Locigno's claim for the $10,000.00 it received when it wrongfully garnished the bank account of a party against whom it did not have a judgment [i.e., 425 West Bagley, Inc.]. And, worst of all, it is clear that Zipkin, Whiting kept the $10,000.00 it received from the garnishment without even providing notice of the receipt of those funds to Ms. Locigno, because Ms. Locigno had no knowledge of the receipt of those funds during her deposition in this case.

It is respectfully submitted that, since there is no judgment in the state court in favor of Zipkin, Whiting, and since there was no relationship between Zipkin, Whiting and the debtors

upon which a 11 U.S.C. §523(a)(6) action can be based, that the Court must deny Zipkin, Whiting's motion for summary judgment and enter summary judgment in Respondent's favor instead.

Conclusion

For the foregoing reasons, Respondents request that the Court enter an order denying Movan'ts motion for summary judgment and entering judgement in their favor instead.

/s/ *Richard H. Nemeth*
Richard H. Nemeth (#0007392)
*Attorney for Respondents*

**CERTIFICATE OF SERVICE**

I certify that on November 4, 2019, a true and correct copy of the foregoing was served:

Via the Court's Electronic Case Filing System on these entities and individuals who are listed on the Court's Electronic Mail Notice List:

Virgil Brown,Jr., trustee, at virgil@vebtrustee.com
Kevin M. Gross, Esq., attorney for Movants, at kgross.zipkinwhiting@gmail.com
Lewis A. Zipkin, Esq., attorney for Movants, at zfwlpa@aol.com

And by regular U.S. mail, postage prepaid, on:

Paul A. Zacharias and Vivian Zacharias, 10767 Gate Post Rd., Strongsville, OH 44149.

/s/ *Richard H. Nemeth*
Richard H. Nemeth (#0007392)
*Attorney for the Respondents*